UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JONATHAN SILVANO RAMOS DE LA ROSA,

                Petitioner,

-v-

DEPARTMENT OF HOMELAND SECURITY,

                Respondent.

CIVIL ACTION NO.: 20 Civ. 10038 (LGS) (SLC)

**REPORT AND RECOMMENDATION**

**SARAH L. CAVE**, United States Magistrate Judge.

**TO THE HONORABLE LORNA G. SCHOFIELD**, United States District Judge:

## I. INTRODUCTION

Jonathan Silvano Ramos de la Rosa ("Ramos"), through counsel, filed a petition for a writ of habeas corpus under 28 U.S.C. § 2241 naming as Respondent the Department of Homeland Security ("DHS"). (ECF No. 1 (the "Petition")). Ramos, who is currently detained at the Metropolitan Correctional Center ("MCC") awaiting trial in this District on charges that he illegally reentered the United States after having been removed due to a previous federal conviction, raises two claims in the Petition, "Plaintiff [sic] removal charge was wrong", and "Plaintiff entitled [sic] to relief," and asks the Court "to order release of the Plaintiff [sic]" and to "stop the deprotation [sic] of the Plaintiff [sic]." (Id. at 6–7).

DHS has moved pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) to dismiss the Petition on the grounds that: (i) it fails to state a plausible claim for relief under § 2241; (ii) the fact that DHS is not detaining Ramos deprives the Court of subject matter jurisdiction under § 2241; and (iii) the Court lacks subject matter jurisdiction over his challenges

1

to his removal order.  (ECF No. 11 (the "Motion")).  For the reasons set forth below, I respectfully recommend that the Motion be GRANTED and the Petition be DISMISSED WITH PREJUDICE.

## II. BACKGROUND

The Court draws the following summary of the facts from the Petition and accompanying affidavit ("Ramos' Affidavit") and exhibits (ECF No. 1), the Declaration of United States Immigration and Customs Enforcement ("ICE") Deportation Officer Brian Figueiredo ("Figueiredo") (ECF No. 10), and the record in Ramos' federal criminal proceedings, discussed further below.  See Barros Anguisaca v. Decker, 393 F. Supp. 3d 344, 346 n.2 (S.D.N.Y. 2019) (considering facts set forth in petition, government's opposition, and exhibits attached to supporting declarations); Yearwood v. Barr, 391 F. Supp. 3d 255, 258 (S.D.N.Y. 2019) (summarizing facts taken from petition and parties' declarations).  The facts are largely undisputed, except where noted.

### A. Factual Background

Ramos is a native and citizen of the Dominican Republic who was admitted to the United States as a lawful permanent resident on April 24, 1998.  (ECF Nos. 1 at 10 ¶ 1; 10 at 2 ¶ 4).  On December 22, 2005, Ramos was convicted in the United States District Court for the Southern District of New York[1] of distribution and possession with intent to distribute crack, in violation of 21 U.S.C. §§ 812, 841(a), and 841(b)(1)(C), and use of a firearm in relation to drug trafficking, in violation of 18 U.S.C. § 924(c)(1)(A)(i),[2] for which the Honorable Jed S. Rakoff sentenced him to

---

[1] Ramos incorrectly states that this conviction occurred in the Southern District of Texas.  (ECF No. 1 at 10 ¶ 2).
[2] Both Ramos and DHS cite the statute for his firearm conviction as "18 U.S.C. § 924(c)(1)(A)(I)," which the Court interprets to refer to 18 U.S.C. § 924(c)(1)(A)(i), given the non-existence of a subparagraph labeled

72 months' (later reduced to 69 months) imprisonment (the "2005 Conviction"). (ECF Nos. 1 at 10 ¶¶ 2–3; 10 at 2 ¶ 5; see United States v. Ramos, No. 05 Cr. 646 (JSR), ECF Nos. 13, 17). Ramos claims in his Affidavit that he "was a victim of trafficking having been recruited and preyed upon by certain criminals" who sought to put him in "involuntary servitude and forced labor involving guns," but that during his prison term for the 2005 Conviction, he cooperated with law enforcement by providing the names of his alleged traffickers. (ECF No. 1 at 10–11 ¶¶ 4–5).

On March 9, 2010, Ramos completed his federal sentence for the 2005 Conviction, and the same day, ICE arrested him and placed him into immigration custody for the purpose of initiating removal proceedings. (ECF No. 10 at 2 ¶ 6). On March 9, 2010, ICE served Ramos with a Notice to Appear (the "NTA") charging him as removable on three grounds: (i) conviction for an aggravated felony relating to his controlled substance offense, Immigration and Nationality Act ("INA") § 237(a)(2)(A)(iii), 8 U.S.C. § 1227(a)(2)(A)(iii); (ii) conviction for an aggravated felony relating to his firearm offense, INA § 237(a)(2)(A)(iii), 8 U.S.C. § 1227(a)(2)(A)(iii); and (iii) conviction for an offense related to a controlled substance violation, INA § 237(a)(2)(B)(i), 8 U.S.C. § 1227(a)(2)(B)(i). (ECF Nos. 1 at 11 ¶ 7; 10 at 2 ¶ 7). On April 19, 2010, an immigration judge in Houston, Texas found that Ramos had admitted the allegations in the NTA and had not filed any application for relief from removal, and ordered Ramos removed from the United States (the "Removal Order"). (ECF No. 1 at 11 ¶ 8; 10 at 3 ¶ 9). Ramos waived appeal of the Removal Order, rendering it final, and on May 5, 2010, ICE removed Ramos from the United States to the Dominican Republic. (ECF Nos. 1 at 11 ¶ 8; 10 at 3 ¶¶ 9–10).

---

"924(c)(1)(A)(I)" in the statute, and the fact that the Indictment on which the 2005 Conviction is based cites 18 U.S.C. § 924(c)(1)(A)(i). See United States v. Ramos, No. 05 Cr. 646 (JSR), ECF No. 11 at 2.

3

In January 2017, ICE became aware that Ramos had unlawfully reentered the United States, possibly via Mexico on May 25, 2013. (ECF No. 10 at 3 ¶ 11; see ECF No. 3 at 31). On January 26, 2017, the United States Attorney's Office for the Southern District of New York ("USAO") notified ICE that it intended to prosecute Ramos for illegal reentry. (ECF No. 10 at 3 ¶ 12). On February 17, 2017, the New York City Police Department ("NYPD") arrested Ramos for several crimes under New York State Penal and Vehicle and Traffic Laws including identity theft, forgery, and unlicensed operation of a motor vehicle (the "2017 Arrest"). (Id. at 3 ¶ 13). After Ramos failed to appear in court on April 4, 2017, a warrant was issued for his arrest (the "April 2017 Warrant"). (Id. at 3–4 ¶ 13)

On March 8, 2017, Figueiredo swore out a criminal complaint in the Southern District of New York seeking to charge Ramos with one count of illegal reentry in violation of 8 U.S.C. §§ 1326(a) & (b)(2) (the "Reentry Charge"), and a warrant was issued for his arrest (the "March 2017 Warrant"). (ECF No. 10 at 4 ¶ 14). Ramos remained a fugitive for over three years, until May 20, 2020, when the NYPD arrested him in the Bronx and charged him with criminal possession of both a controlled substance (marijuana) and a weapon, in violation of New York Penal Law §§ 220.21(1), 221.25, and 265.02(3). (Id. at 4 ¶ 15). While those charges were pending, on June 2, 2020, Ramos was returned on the April 2017 Warrant to New York State Supreme Court, New York County, to face the charges arising from his 2017 Arrest. (Id. at 4 ¶ 16). On November 10, 2020, he was convicted on a plea of guilty to offering a false instrument and sentenced to six months in jail. (Id.)

On November 16, 2020, ICE's Joint Criminal Alien Response Team arrested Ramos at Rikers Island pursuant to the March 2017 Warrant. (ECF No. 10 at 4 ¶ 17). The United States

Marshals Service took Ramos into custody based on the Reentry Charge, on which the United States Bureau of Prisons ("BOP") is detaining him at the MCC pending trial in this District on the Reentry Charge. (Id.) Contrary to his assertion in the Petition (ECF No. 1 at 1), Ramos is not, and has not been since his removal from the United States on May 5, 2010, in the custody of DHS. (Id. at 5 ¶ 19).

The case involving the Reentry Charge appeared as docket number 17 Mag. 1652 in this District, before being merged into a criminal case captioned, United States v. Ramos de la Rosa, No. 21Cr. 210 (JSR). (See United States v. Ramos de la Rosa, No. 17 Mag. 1652). On February 10, 2021, the USAO filed a notice of its intent to file an information as to the Reentry Charge against Ramos. (United States v. Ramos de la Rosa, No. 21 Cr. 210 (JSR), ECF No. 4). On March 29, 2021, Ramos waived indictment and the USAO filed the information (the "Information") containing the Reentry Charge, to which Ramos pled not guilty. (Id. at ECF Nos. 5, 6, minute entry Mar. 29, 2021). A trial date is set for October 4, 2021. (Id. at ECF minute entry Apr. 21, 2021). The record contains no indication that DHS has attempted to remove Ramos from the United States before the Reentry Charge is fully adjudicated.

On November 23, 2020, Ramos filed in the Houston immigration court that issued his Removal Order a motion to reopen (the "Motion to Reopen"), which ICE has opposed and remains pending. (ECF No. 10 at 4–5 ¶ 18).

**B. Procedural History**

On December 1, 2020, Ramos, represented by counsel, filed the Petition and his Affidavit, lacking his counsel's and his signatures. (ECF No. 1). Later the same day, Ramos refiled the Petition, unchanged except that it was now signed by his counsel, with Ramos' Affidavit signed

by "Lilibeth Paulino," whom Ramos asked to sign on his behalf. (ECF No. 3 at 24–25). In what he characterizes as a "collateral attack" on the Removal Order, Ramos argues that: (1) his 2005 Conviction for distribution and possession with intent to distribute crack is "vague" and does not constitute an aggravated felony or a controlled substance offense for which he can be removed; (2) his 2005 Conviction for use of a firearm in relation to drug trafficking "does not exist," is "vague," and is therefore not an aggravated felony for which he can be removed; and (3) he is entitled to several forms of relief from removal.[3] (Id. at 12, 16–19). Ramos asks the Court to grant the following relief in the Petition: (1) grant a writ of habeas corpus directing DHS to bring him to Court and explain why he should not immediately be released from custody; (2) "deny the warrant" for his arrest and order him released; and (3) issue a declaratory judgment that (a) Ramos "is not a danger to the community" and "is not a threat to national security and safety [sic] of the people of the United States"; (b) his detention violates the Due Process Clause, the Eighth Amendment, and his right to the effective assistance of counsel; and (c) he is eligible to be released on bond and that DHS's interpretation of the INA is "arbitrary and capricious" and violates the Eighth Amendment and the Due Process Clause. (Id. at 22–23).

---

[3] The Petition does not contain statutory or regulatory citations for the relief from removal to which Ramos claims he is entitled (ECF No. 1 at 19). The Court assumes Ramos is referring to: (i) relief under the United Nations Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment, Dec. 10, 1984, S. Treaty Doc. No. 100-20 (1988), 1465 U.N.T.S. 85 ("CAT"); (ii) a T-nonimmigrant visa as a victim of trafficking under 8 C.F.R. § 214.11 ("T-visa"); and (iii) a U-nonimmigrant visa as a victim of a crime under 8 U.S.C. § 1101(a)(15)(U)(i) ("U-visa"). See Cortes-Gomez v. Barr, 765 F. App'x 593, 595 n.1 (2d Cir. 2019) (explaining eligibility for U-visa); Lin v. U.S. Dep't of Justice, 432 F.3d 156, 157–58 (2d Cir. 2005) (explaining that CAT "prevents state parties from removing an alien to a country where he more likely than not would be tortured by, or with the acquiescence of, government officials acting in an official capacity"); Elat v. Ngoubene, 993 F. Supp. 2d 497, 518 (D. Md. 2014) (explaining eligibility for T-visa).

In his Affidavit, Ramos alleges that, in the Dominican Republic, "American Returnees are being target [sic] of violent attacks, torture, cruel and inhuman treatment," and that he and his "children are being exposed [sic] to these dangers if [they] return now." (ECF No. 3 at 25 ¶¶ 21–22). He asserts that he wants "to argue withholding, CAT Relief or any other relief before the immigration judge upon reopening." (Id. at 25 ¶ 23). Attached to Ramos' Affidavit are receipts for his filing of applications in 2020 for asylum and other relief from removal, an undated narrative, and medical records reflecting treatment of Ramos for injuries, including a gunshot wound in July 2003. (ECF No. 3 at 28–78).

On December 8, 2020, the Court directed the USAO to respond to the Petition. (ECF No. 5). On February 22, 2021, DHS filed the Motion. (ECF Nos. 9–11). DHS argues that the Petition should be dismissed because: (1) it fails to state a cognizable claim for relief; (2) the Court lacks subject matter jurisdiction under Section 2241 because Ramos is not in the custody of DHS, the only Respondent in this action; and (3) the Court lacks subject matter jurisdiction over Ramos' challenge to his Removal Order. (ECF No. 11).

On March 13, 2021, Ramos filed his opposition to the Motion (the "Opposition"), which largely repeats the contents of his Petition. (ECF No. 15). Ramos reiterates in his Opposition that his Petition is "a collateral attack" on his Removal Order and argues that while his applications for relief from removal are pending, the "[D]ue [P]rocess [C]lause requires that [he] be released." (ECF No. 15 at 3, 5). As to DHS's arguments that the Court lacks jurisdiction because he is not in DHS custody, Ramos responds that DHS ordered that he be detained and "holds the key to release." (Id. at 11).

On March 22, 2021, DHS filed a reply in further support of the Motion, pointing out the duplication between the Petition and the Opposition and that Ramos failed to address DHS's jurisdictional arguments. (ECF No. 16).

### III. DISCUSSION

#### A. Legal Standards

##### 1. Rule 12(b)(1)

"'Determining the existence of subject matter jurisdiction is a threshold inquiry.'" O'Diah v. TBTA-Triboroug[h] Bridge & Tunnel Auth., No. 19 Civ. 7586 (VSB), 2020 WL 5849395, at *1 (S.D.N.Y. Oct. 1, 2020) (quoting Morrison v. Nat'l Austl. Bank Ltd., 547 F.3d 167, 170 (2d Cir. 2008) (internal citations omitted), aff'd, 561 U.S. 247 (2010)). "'A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it.'" Anders v. Verizon Commc'ns Inc., No. 16 Civ. 5654 (VSB), 2018 WL 2727883, at *4 (S.D.N.Y. June 5, 2008) (quoting Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000)). When subject matter jurisdiction is challenged, the petitioner "is required to show that subject matter jurisdiction exists by a preponderance of the evidence." Id. When analyzing a challenge to subject matter jurisdiction, "'the district court must take all uncontroverted facts in the complaint . . . as true, and draw [all] reasonable inferences in favor of the party asserting jurisdiction.'" Id. (quoting Tandon v. Captain's Cove Marina of Bridgeport, Inc., 752 F.3d 239, 243 (2d Cir. 2014)). Subject matter "'jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it.'" Id. (quoting Morrison, 547 F.3d at 170) (internal citation omitted)). "[I]n resolving a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), a district court 'has

the power and obligation to decide issues of fact by reference to evidence outside the pleadings, such as affidavits.'" Id. (quoting Tandon, 752 F.3d at 243 (internal citation omitted)). The Court "must accept [petitioner's] 'material factual allegations' as true," but "'argumentative inferences favorable to the party asserting jurisdiction should not be drawn.'" Asylum Seeker Advoc. Project v. Barr, 409 F. Supp. 3d 221, 223–24 (S.D.N.Y. 2019) (quoting Atl. Mut. Ins. Co. v. Balfour Maclaine Int'l Ltd., 968 F.2d 196, 198 (2d Cir. 1992)).

### 2. Rule 12(b)(6)

To state a claim that can survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)); see Djangmah v. Magafara, No. 16 Civ. 6136 (VSB), 2018 WL 4080346, at *3 (S.D.N.Y. Aug. 26, 2018) (quoting Iqbal and Twombly). A claim has "'facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" Djangmah, 2018 WL 4080346, at *3 (quoting Iqbal, 556 U.S. at 678)). "'Plausibility . . . depends on a host of considerations: the full factual picture presented by the complaint, the particular cause of action and its elements, and the existence of alternative explanations so obvious that they render plaintiff's inferences unreasonable.'" Id. (quoting L-7 Designs, Inc. v. Old Navy, LLC, 647 F.3d 419, 430 (2d Cir. 2011)). On a Rule 12(b)(6) motion to dismiss, "a court must accept as true all well-pleaded facts alleged in the [Petition] and must draw all reasonable inferences in the [petitioner]'s favor." Djangmah, 2018 WL 4080346, at *3 (citing Kassner v. 2nd Ave. Deli. Inc., 496 F.3d 229, 237 (2d Cir. 2007)). The Petition "need not make 'detailed factual allegations,' but it must contain more than mere

'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'" Id. (quoting Iqbal, 556 U.S. at 678 (internal citations omitted)). "[A]lthough allegations contained in the [Petition] are assumed to be true, this tenet is 'inapplicable to legal conclusions.'" Id. (quoting Iqbal, 556 U.S. at 678). The Petition is "deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated into it by reference." Chambers v. Time Warner, Inc., 282 F.3d 147, 152 (2d Cir. 2002) (quoting Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co., 62 F.3d 69, 72 (2d Cir. 1995)).

### B. Application

#### 1. Subject matter jurisdiction

Whether the Court has subject matter jurisdiction over the claims in the Petition is a threshold question. See Henderson ex rel. Henderson v. Shinseki, 562 U.S. 428, 434 (2011) ("[F]ederal courts have an independent obligation to ensure that they do not exceed the scope of their jurisdiction, and therefore they must raise and decide jurisdictional questions that the parties either overlook or elect not to press."); Barros Anguisaca, 393 F. Supp. 3d at 348 ("At the threshold, the Court must determine whether it has jurisdiction over this action."); Alomaisi v. Decker, No. 20 Civ. 5059 (VSB)(SLC), 2021 WL 611047, at *5 (S.D.N.Y. Jan. 27, 2021) (citing Henderson, 562 U.S. at 434; Barros Anguisaca, 393 F. Supp. 3d at 348). This Court lacks jurisdiction over Ramos' Petition for two reasons: he is not in the custody of DHS, and the REAL ID Act of 2005, Pub. L. 109–13, 119 Stat. ("REAL ID Act"), precludes jurisdiction over his challenge to his Removal Order.

### a. The Court lacks subject matter jurisdiction because Ramos is not in DHS custody and his Petition is premature.

Section 2241 of Title 28 authorizes a district court to grant a writ of habeas corpus to a prisoner who is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Under Second Circuit precedent, "[a] jurisdictional prerequisite for the granting of a writ of habeas corpus under [Section] 2241 is that the petitioner be 'in custody.'" Simmonds v. Immigr. & Naturalization Servs., 326 F.3d 351, 354 (2d Cir. 2003) (quoting 28 U.S.C. § 2241). For a "'core habeas petition[] challenging present physical confinement,'" the requisite respondent "is the individual with the ability to produce the petitioner—usually the warden of the facility where the petitioner is detained." Hoyte v. Holder, No. 10 Civ. 3460 (PAC) (JLC), 2010 WL 6350756, at *3 (S.D.N.Y. Oct. 22, 2010) (quoting Rumsfeld v. Padilla, 542 U.S. 426, 434, 443 (2004)), adopted by, 2011 WL 1143043 (S.D.N.Y. Mar. 25, 2011). In other words, "[a]bsent custody by the authority against whom relief is sought, jurisdiction usually will not lie to grant the requested writ." Severino v. Thornburgh, 778 F. Supp. 5, 6 (S.D.N.Y. 1991) (quoting Campillo v. Sullivan, 853 F.2d 593, 595 (8th Cir. 1988)). Accordingly, Ramos "must be in the custody of [DHS or ICE] to obtain the habeas relief he seeks." DiGrado v. Ashcroft, 184 F. Supp. 2d 227, 231 (N.D.N.Y. 2002); see Johnson v. Ashcroft, 40 F. App'x 633, 634 (2d Cir. 2002) (holding that district court lacked jurisdiction over petitioner in BOP custody but whose Section 2241 petition sought relief against Immigration and Naturalization Service ("INS"), predecessor to ICE).

In the Petition, Ramos "challenges his present physical confinement" and asks the Court to order his release; "therefore the Petition must name the individual with the authority to produce him—the warden of" MCC. Hoyte, 2010 WL 6350756, at *4. Instead, the Petition names only DHS and incorrectly alleges that he is being detained by DHS and ICE (ECF No. 1 at 1), when

the record reflects that he is being detained at MCC by the BOP pending resolution of the Reentry Charge. (ECF No. 10 at 4 ¶ 17). Like the petitioner over whom the district court in DiGrado lacked jurisdiction, Ramos "was arrested on federal criminal charges," is currently in the custody of BOP at MCC, is not being held pursuant to a removal order or pending removal proceedings, and therefore, is not in the custody of DHS. DiGrado, 184 F. Supp. 2d at 232–33 (collecting cases in which courts held that they lacked jurisdiction over Section 2241 petitions that named immigration agencies as respondents when petitioner was not in immigration custody). Accordingly, this Court lacks jurisdiction under Section 2241.

Although Ramos has not requested leave to amend to add a different Respondent (nor to amend for any other reason), such an amendment would not cure the jurisdictional defect under Section 2241. As noted above, Ramos is detained by the BOP at the MCC pending trial on the Reentry Charge, to which he has only recently pled not guilty. (See United States v. Ramos de la Rosa, No. 21 Cr. 210 (JSR), ECF minute entry Mar. 29, 2021). Because his criminal trial on the Reentry Charge has not commenced, let alone reached judgment, a petition under Section 2241 is premature. See Johnson, 40 F. App'x at 634 (holding that, even if the Court were to construe Section 2241 petition as seeking relief from BOP detention, it was premature because the "criminal trial had not yet commenced"); Morrow v. Terrell, 715 F. Supp. 2d 479, 480 (S.D.N.Y. 2010) (dismissing Section 2241 petition filed by pretrial detainee awaiting trial).

### b. The Court lacks subject matter jurisdiction over Ramos' challenge to his Removal Order.

With respect to what Ramos describes as a "collateral attack" on his Removal Order, the Court must consider whether the REAL ID Act eliminates subject matter jurisdiction. See Alomaisi, 2021 WL 611047, at *5–7 (analyzing threshold question whether REAL ID Act barred

jurisdiction over petition challenging removal order). The REAL ID Act amended the INA to include, as is relevant here, the following two provisions in Section 1252:

> (a)(5) Notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, a petition for review filed with an appropriate court of appeals in accordance with this section shall be the <u>sole and exclusive means</u> for judicial review of an order of removal entered or issued under any provision of this chapter . . . .
>
> \*\*\*
>
> (g) Except as provided in this section and notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 or Title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, <u>no court shall have jurisdiction</u> to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter.

8 U.S.C. § 1252(a)(5), (g) (emphasis added). "The Second Circuit has held that, in allocating challenges to removal orders uniquely to the federal courts of appeals, [Section] 1252(a)(5) 'clearly preclude[s] [a] district court's entertaining of a direct challenge to a removal order.'" <u>Barros Anguisaca</u>, 393 F. Supp. 3d at 349 (quoting <u>Delgado v. Quarantillo</u>, 643 F.3d 52, 55 (2d Cir. 2011)). In <u>Delgado</u>, the Second Circuit explained that the prohibition in Section 1252(a)(5) "applies equally to preclude . . . an indirect challenge." <u>Delgado</u>, 643 F.3d at 55. As to Section 1252(g), the Supreme Court has "narrowly read" that provision "to apply only to three discrete actions that the Attorney General may take — <u>i.e.</u>, his decision or action to commence proceedings, adjudicate cases, or execute removal orders." <u>Vidhja v. Whitaker</u>, No. 19 Civ. 613 (PGG), 2019 WL 1090369, at \*4 (S.D.N.Y. Mar. 6, 2019) (internal citations omitted).

As the Second Circuit explained in <u>Delgado</u>, whether a federal court has jurisdiction turns "on the substance of the relief that the plaintiff [or petitioner] is seeking." 643 F.3d at 55. In <u>Delgado</u>, the plaintiff styled her complaint as an action for mandamus, alleging that the denial of

her I-212 application for readmission[4] violated the APA, Due Process Clause, and Equal Protection Clause. Id. at 54. The Second Circuit affirmed the district court's dismissal for lack of jurisdiction, holding that because the plaintiff sought "to force an adjudication on the merits of an I-212 application" that would automatically render her removal order invalid, she was "indirectly challenging her reinstated order of removal" to which "[S]ection 1252(a)(5)'s jurisdictional bar applie[d] equally." Id. at 55.

Following Delgado, other district courts in this District have held that they lack jurisdiction in cases where a petitioner moved to set aside a final order of removal pending the resolution of an "immigration adjudication[] that necessarily stood, if successful, effectively to vacate the underlying order of removal." Barros Anguisaca, 393 F. Supp. 3d at 349 (dismissing for lack of jurisdiction under Section 1252 habeas corpus petition that sought stay of removal while motion to reopen application for cancellation of removal was pending); see Vidhja, 2019 WL 1090369, at *3–5 (dismissing for lack of jurisdiction under Section 1252 habeas corpus petition that sought stay of removal while motion to reopen was pending); Singh v. USCIS, No. 15 Civ. 1411 (JMF), 2016 WL 1267796, at *6 (S.D.N.Y. Mar. 30, 2016) (dismissing for lack of jurisdiction under Section 1252 complaint that sought to set aside final order of removal pending motion to reopen application for adjustment of status), aff'd, 878 F.3d 441 (2d Cir. 2018); Nieto-Ayala v. Holder, No. 08 Civ. 8347 (LMM), 2011 WL 3918156, at *2–3 (S.D.N.Y. Aug. 30, 2011) (granting motion to

---

[4] INA Section 212, 8 U.S.C. § 1182(a)(9)(C)(i)(II), provides that an alien who has been ordered removed but re-enters the United States without being admitted is "inadmissible," but may be "admissible" if "more than 10 years after the date of the alien's last departure from the United States" and "prior to the alien's reembarkation at a place outside the United States or attempt to be readmitted from a foreign contiguous territory, the Secretary of [DHS] has consented to the alien's reapplying for admission." INA § 212(a)(9)(C)(ii), 8 U.S.C. § 1182(a)(9)(C)(ii). To apply for adjustment of status, an alien who has previously been removed "must request permission to reapply for entry" on Form I-212. 8 C.F.R. § 212(e).

dismiss writ of mandamus seeking to compel continued release on bond pending adjudication of asylum application). In each case, the district courts concluded that the petitioner's claim constituted a challenge to the final order of removal, over which Section 1252(a)(5) deprived the district court of jurisdiction.

Here, Ramos does not acknowledge, let alone distinguish, this precedent, instead admitting repeatedly that his Petition presents "a collateral attack" on his Removal Order. (ECF Nos. 3 at 12; 15 at 3). This admission is fatal to the Court's jurisdiction under Section 1252(a)(5). Even absent his admissions, the Petition represents a direct challenge to the Removal Order, arguing, inter alia, that the controlled substance conviction on which the Removal Order is based "is vague generally and as to CRACK [sic] particularly," that the offenses for which Ramos was convicted were not aggravated felonies, and that he is entitled to relief from removal. (Id. at 16–19). Because ruling in Ramos' favor on any of his arguments would "automatically render [his] [R]emoval [O]rder invalid," this Court lacks jurisdiction over the Petition. Barros Anguisaca, 393 F. Supp. 3d at 349 (citing Delgado, 643 F.3d at 55); see Hoyte, 2010 WL 6350756, at *6 (finding that district court lacked jurisdiction over petitioner's claims that his convictions were not aggravated felonies, which represented "claims regarding the legality of the removal order itself" over which the REAL ID Act vested exclusive jurisdiction in the courts of appeals).[5]

In addition, to the extent that Ramos' Petition seeks a stay of his removal pending resolution of his Motion to Reopen in the Houston Immigration Court, such "a request for a stay

---

[5] Ramos' self-described "collateral attack[s]" on his Removal Order distinguish his case from S.N.C. v. Sessions, No. 18 Civ. 7680 (LGS), 2018 WL 6175902 (S.D.N.Y. Nov. 26, 2018), in which the District Court held that the REAL ID Act did not preclude jurisdiction over a Section 2241 petition asserting claims that would "not nullify [the] removal order" and did "not challenge the wisdom of ICE's decision to remove [petitioner.]" S.N.C., 2018 WL 61775902, at *4–6.

of removal constitutes a challenge to a removal order, and [] accordingly district courts lack jurisdiction to grant such relief." Vidhja, 2019 WL 1090369, at *3 (internal citations omitted); see Barros Anguisaca, 393 F. Supp. 3d at 350 (holding that, under REAL ID Act, district court lacked jurisdiction over indirect challenge to removal order and request for stay of removal); Vasquez v. United States, No. 15 Civ. 3964 (JGK), 2015 WL 4619805, at *4 (S.D.N.Y. Aug. 3, 2015) (holding that where "the relief sought by the current motion [was] a stay of [] removal . . . whatever the merits of [the] underlying claims, the Court does not have jurisdiction to grant this motion").

Accordingly, the Court lacks jurisdiction over the Petition pursuant to Section 1252(a)(5).

### 2. The Petition fails to state a plausible claim for relief

Even if the Court were to have jurisdiction to consider the merits of the arguments in Ramos' Petition, he has failed to state a plausible claim for relief. As DHS correctly notes, Ramos is represented by counsel, who filed the Petition and supporting Memorandum, and therefore he is not entitled the special solicitude or liberal construction courts otherwise afford to pro se litigants. (ECF Nos. 1, 16 at 5). See Triestman v. Fed. Bur. of Prisons, 470 F.3d 471, 474–75 (2d Cir. 2006); McDonald v. Head Crim. Ct. Sup. Officer, 850 F.2d 121, 124 (2d Cir. 1988); see also Tracy v. Freshwater, 623 F.3d 90, 102 (2d Cir. 2010) (noting that "a lawyer representing himself ordinarily receives no such solicitude at all"). In the Petition, a fillable template form, the two asserted grounds for relief are, "Plaintiff removal [sic] charge was wrong," and "Plaintiff entitled [sic] to relief," with the notation, "see attached," presumably referring to the attached Memorandum, Ramos' Affidavit, and exhibits. (ECF No. 1 at 6). Those exhibits, however, do not include or quote the NTA or the Removal Order, and therefore, even if the Court did not face the

jurisdictional bars to reviewing the Removal Order discussed above (see § III.B.1, supra), the Petition presents a practical bar to such review as well.

Attempting to consider Ramos' apparent arguments each in turn, first, there can be no dispute that "[b]ecause trafficking in any amount of crack cocaine constitutes an 'aggravated felony' within the meaning of [INA § 1101], [Ramos'] conviction rendered him not only deportable but subject to mandatory deportation." Phillips v. United States, No. 14 Civ. 5820 (NG), 2015 WL 4112483, at *1 (E.D.N.Y. July 7, 2015). The same is true of his conviction under 18 U.S.C. § 924(c)(1)(A)(i), which the INA designates as an aggravated felony. See 8 U.S.C. § 1101(a)(43)(B) ("illicit trafficking in a controlled substance (as defined in section 802 of Title 21), including a drug trafficking crime (as defined in section 924(c) of Title 18)").

To the extent Ramos argues that his firearm conviction under 18 U.S.C. § 924(c)(1)(A)(i) is unconstitutionally vague under the United States Supreme Court's decision in United States v. Davis, 139 S. Ct. 2319 (2019) and therefore not an aggravated felony for which he could be removed, he has also failed to state a viable claim. (ECF No. 3 at 19). Section 924(c) prohibits using or carrying a firearm in furtherance of a "crime of violence" or a "drug trafficking crime." 18 U.S.C. § 924(c)(1)(A). A crime of violence is a felony that "has as an element the use, attempted use, or threatened use of physical force against the person or property of another" (the "Elements Clause"), or that "by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense" (the "Residual Clause"). 18 U.S.C. § 924(c)(3)(A)–(B). A "drug trafficking crime" is "any felony punishable under the Controlled Substances Act (21 U.S.C. § 801 et seq.)," 18 U.S.C. § 924(c)(2), which includes 21 U.S.C. §§ 812, 841(a), and 841(b)(1)(C), of which Ramos was convicted. (ECF

No. 3 at 10).[6] In Davis, the Supreme Court held that the Residual Clause was unconstitutionally vague, but "did not invalidate the 'drug trafficking crime' predicate for a Section 924(c) conviction, which remains undisturbed by Davis or otherwise." Flowers v. United States, Nos. 19 Civ. 11950 (VB), S8 14 Cr. 768-2 (VB), 2020 WL 6782047, at *2 (S.D.N.Y. Nov. 18, 2020) (citing Davis, 139 S. Ct. at 2336). Ramos was charged with and pled guilty to using or carrying a firearm "in relation to a drug trafficking crime" under 18 U.S.C. § 924(c)(1)(A)(i), and therefore, "Davis has no effect." Williams v. United States, Nos. 15 Cr. 256 (KMW), 19 Civ. 11402 (KMW), 2020 WL 6683075, at *2 (S.D.N.Y. Nov. 12, 2020) (holding that, "where the predicate offense was a drug trafficking crime rather than a crime of violence," the Supreme Court's decision in Davis does not invalidate § 924(c) conviction) (internal citations omitted); see Flowers, 2020 WL 6782047, at *2 (collecting cases holding that Davis did not invalidate § 924(c) convictions predicated on drug trafficking or drug conspiracy offense and upholding conviction of defendant who pled guilty to using and carrying firearm during drug trafficking crime); see also Bright v. United States, No. 14 Civ. 968 (WHP), 2018 WL 5847103, at *6 (S.D.N.Y. Nov. 8, 2018) (rejecting vagueness challenge to conviction under 18 U.S.C. § 924(c)(1)(A)(i) predicated on drug trafficking crime); see Serrano v. United States, Nos. 17 Civ. 6444 (KBF), 13 Cr. 58 (KBF), 2018 WL 3315727, at *7 (S.D.N.Y. July 5, 2018) (declining to vacate Section 924(c) conviction on vagueness grounds because it was "clearly supported by a narcotics predicate").

Finally, although the Petition contains cursory assertions that Ramos qualifies for relief under CAT as well as U- and T-visas, he concedes that he has applied to DHS and that these

---

[6] See also United States v. Ramos, No. 05 Cr. 646 (JSR), ECF No. 13 (judgment on guilty plea to Counts 1 (21 U.S.C. §§ 812, 841(a)(1), and 841(b)(1)(C)) and 2 (18 U.S.C. § 924(c)(1)(A)(i)).

applications are pending, but—correctly—does not ask this Court to grant those applications. (ECF No. 1 at 19, 22–23). To the extent Ramos is asking this Court to stay his removal until those applications are adjudicated, this Court cannot grant such a stay for the reasons set forth above. (See § III.B.1.b, supra). And, in any event, the Petition does not allege that DHS is seeking now to remove him from the United States before his applications are adjudicated, and therefore has not alleged a viable Due Process Claim. Cf. S.N.C., 2018 WL 6175902, at *6 (considering claim that ICE's efforts to remove petitioner while her visa applications were being adjudicated violated Due Process Clause).

Accordingly, in the alternative, I respectfully recommend that the Motion be granted and the Petition be dismissed for failure to state a claim.

## IV. CONCLUSION

For the reasons set forth above, I respectfully recommend that DHS's Motion be GRANTED and Ramos' Petition be DISMISSED WITH PREJUDICE.

Dated:  New York, New York
        April 30, 2021

SO ORDERED.

_____
SARAH L. CAVE
United States Magistrate Judge

\*                               \*                               \*

**NOTICE OF PROCEDURE FOR FILING OBJECTIONS TO THIS REPORT AND RECOMMENDATION**

The parties shall have fourteen (14) days (including weekends and holidays) from service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure. See also Fed. R. Civ. P. 6(a), (d) (adding three additional days when service is made under Fed. R. Civ. P. 5(b)(2)(C), (D) or (F)). A party may respond to another party's objections within fourteen (14) days after being served with a copy. Fed. R. Civ. P. 72(b)(2). Such objections, and any response to objections, shall be filed with the Clerk of the Court. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), (d), 72(b). Any requests for an extension of time for filing objections must be addressed to Judge Schofield.

**FAILURE TO OBJECT WITHIN FOURTEEN (14) DAYS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW.** See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), (d), 72(b); Thomas v. Arn, 474 U.S. 140 (1985).